ROETHLISBERGER, Administrator, Respondent, vs. BANK OF MONTICELLO, Appellant.

*March 7—April 3, 1934.*

For the appellant there was a brief by *Blum & Blum* of Monroe and *Jeffris, Mouat, Oestreich, Wood & Cunningham* of Janesville, and oral argument by *Otto A. Oestreich*.

For the respondent there was a brief by *Bitker, Tierney & Puchner* of Milwaukee, and oral argument by *Irving A. Puchner*.

WICKHEM, J.   The facts in this case are neither complicated nor in dispute.   During his lifetime Simon Roethlisberger owned a real-estate mortgage securing a loan of $30,000, the mortgage debtors being Messrs. Zurfluh, Kaempfer, and Portman.   On March 6, 1920, Roethlisberger, by assignment absolute in form, assigned the mortgage to the defendant bank as collateral security for a loan of $11,000 and any additional amounts that might subsequently be loaned.   Thereafter, on February 27, 1927, Roethlisberger assigned the mortgage to Rolph Brothers to secure the payment of a debt of about $12,500, and later he assigned it further to a motor company at Monroe for $500 and to one Kinzie for $1,000.   Defendant foreclosed the assigned mortgage, and the real estate incumbered

thereby was duly sold. At the time of sale the bank's claim against Roethlisberger was $14,656.38. At the foreclosure sale eighty acres were sold for $6,400, and that amount credited upon the debt of the bank, leaving a balance of $8,256.38. The balance of the land secured by the mortgage was bid in by Rolph Brothers for $11,000. Rolph Brothers did not have the money to meet their bid, and the sheriff's deed was by arrangement delivered to the bank, to be held as security for the balance of its claim. On March 13, 1931, Rolph Brothers sold the property to one Weiss for $12,500. Weiss paid $6,000 down and gave a mortgage for $6,500 for the balance. During the time between the foreclosure sale and conveyance to Weiss, Rolph Brothers had made payments upon their indebtedness to the bank, and owed only $3,256.38. Upon receipt of the $6,000 paid by Weiss, the bank canceled its claim for which the mortgage had been assigned as security, and credited the account of Rolph Brothers with the sum of $2,743.62. The net result of these transactions was that the foreclosure sale had yielded $17,400. The claim of the bank was $14,656.38. The balance of $2,743.62 had been received by Rolph Brothers as a credit against their claim of $12,500 against Roethlisberger. In addition, Rolph Brothers held a mortgage on the premises for $6,500, and their claim against Roethlisberger, for the purposes of this discussion, may be treated as reduced by this sum, and by the further sum of $1,500, representing the excess over the $11,000, realized by the sale to Weiss. The foreclosure proceedings resulted in a deficiency judgment entered on January 24, 1927, for $19,079.61 against Zurfluh, Kaempfer, and Portman. The defendant bank, through its attorney, made efforts to collect this judgment, and ultimately accepted the cash payment of $5,000 from Portman, one of the judgment debtors. In return for this payment the defendant bank satisfied the deficiency judgment. This act is the tort herein complained of.

Before proceeding to a consideration of the questions of law involved in this case, it may be well to state that there is literally no evidence in the record, (1) that the bank was guilty of negligence in making the settlement, and (2) that plaintiff suffered any damage. The evidence tends only to prove rather meticulous investigation. Assuming the jury to have had the right to reject this evidence, and to have rejected it, it leaves no evidence of negligence in the record. The same is true of the damages. There is no evidence to show that the security which the judgment represented was worth a sum in excess of $5,000. It is thus evident that upon the principal questions presented here the assignment of the burden of proof upon either question will be determinative.

It is the contention of the defendant that this is an action for tort, based upon an unauthorized or a negligent dealing with a pledged security, and that there is no showing either of negligence or want of authority; that it is an action for damages as a result of such negligent or unauthorized dealing, and that there is no proof of damages. Both of these elements are contended to be a part of plaintiff's case, as to which plaintiff sustains the burden of proof. If defendant is correct with respect to the burden of proof, then its conclusions seem clearly to follow in the present state of the record. It is the contention of the plaintiff that this is an action for the conversion of a chose in action, and that the damages in such a case are *prima facie* the face value of the chose in action. *Kalckhoff v. Zoehrlaut,* 43 Wis. 373; *Dickson v. Cole,* 34 Wis. 621. It is asserted that the following cases hold that the burden of proof that a converted chose in action is worth less than its face value is on the defendant: *W. H. Kiblinger Co. v. Sauk Bank,* 131 Wis. 595, 111 N. W. 709; *Giffert v. West,* 33 Wis. 617. It is further contended that it is a rule of law that a pledgee holding a chose in action as collateral security may recover the entire amount of the chose in action, hold-

ing such amount as is in excess of the sum due him in trust for the pledgor. *Union Nat. Bank v. Roberts,* 45 Wis. 373.

The position taken by plaintiff is used as a foundation for applying the well-established rule of law that where a person occupying a position of trust deals with property of another, the burden is on such trustee to show that such dealing was authorized. *Kluender v. Fenske,* 53 Wis. 118, 10 N. W. 370; *Biss' Estate,* 4 Pa. Dist. Rep. 251; *Dufford's Ex'r v. Smith,* 46 N. J. Eq. 216, 18 Atl. 1052; *Alexander v. Fidelity Trust Co.* 249 Fed. 1; *Walker's Appeal,* 140 Pa. St. 124, 21 Atl. 311; *In re Wentworth* (Sur. Rep.), 181 N. Y. Supp. 435, 442.

Before further examining this contention, it is necessary to consider another contention of plaintiff. It has heretofore been stated that Rolph Brothers sold to one Weiss for $12,500, receiving $6,000 cash and a mortgage for $6,500 covering the balance due. Plaintiff asserts, and the evidence shows, that two mortgages, each running from Weiss to Rolph Brothers, are on record, each bearing the same date. Plaintiff contends that this shows, or would authorize the jury to believe, that Rolph Brothers sold the place for $19,000. If this were true it would mean that the total receipts from the sale of the property amounted to $25,400, which, added to the $5,000 realized upon the deficiency judgment, would mean a total of $30,400 realized upon the security. The application of this sum to the debt owed to the bank, amounting to $14,656.38, and that owing to Rolph Brothers of $12,500, would leave a balance owing Roethlisberger of over .$3,000. If this contention were true in fact, there might be merit to the contention that the bank, as trustee of the balance over and above the debt, would be liable to account for this excess. But we discover no ground upon which the jury could reasonably conclude from the fact that two mortgages appear of record, that the sale price was more than $12;500. The testimony is

that there was only one note for $6,500 given by Weiss, and that the sale price was $12,500. This was the testimony not only of Charles M. Rolph but of William Weiss and the scrivener. The mortgages are identical except for the manner of describing the property. In the mortgage first recorded the property is described as "fractional lots four, five, and twelve and two acres in the northeast corner of fractional lot eight, being twenty rods east and west by sixteen rods north and south," etc. The mortgage last recorded changed the order of description, the property being described as "two acres in the northeast corner of fractional lot eight, being twenty rods east and west by sixteen rods north and south," etc. A reading of the first description might give the impression, due to sentence construction, that the whole plat conveyed was twenty rods by sixteen rods, whereas the second description clearly applies this dimensional limitation solely to the two acres. Since a plat twenty rods by sixteen rods contains two acres, it may be inferred that one mortgage was intended to correct the description in the other. At any rate it is our conclusion that the recording of the two mortgages will not support an inference that the sale to Weiss produced $19,000 instead of $12,500.

It follows that Rolph Brothers had an interest in the deficiency judgment of about $8,000. In *Anglo-California Trust Co. v. Oakland Rys.* 193, Cal. 451, 225 Pac. 452, the court stated:

"The rendition of the judgment on the notes in question did not alter or extinguish their character as collateral security. The judgments were as much collateral as the notes were before judgment was rendered. . . . They are the same security in another and higher form. . . . Only the form and not the substance was changed."

This being true, the bank could act upon the authority of Rolph Brothers in attempting to realize upon the judgment. It is true that the bank owed Roethlisberger a duty

to act with reasonable care in liquidating the security, but it was not required to look to Roethlisberger for its authority. The authorization by Rolph Brothers is conceded. Hence, so far as the case depends upon a trust relation or a conversion, it must fail. Nothing is left except the charge that the bank's satisfaction was improvidently and carelessly given. Plaintiff must sustain the burden of proving this, and, as heretofore stated, there is no proof of this. In *Walmer v. First Acceptance Co.* 192 Wis. 300, 212 N. W. 638, it is stated:

"The general rule has been stated quite uniformly by the authorities that a pledgee is required, in the exercise of ordinary care, to take such action as is necessary to collect such note, and certainly it is to take such steps as presentment, demand, and notice in order to fix the liability of other parties thereto than the maker, and also that ordinarily negligence in collecting and subsequent insolvency of the parties make the pledgee liable."

See also *First Nat. Bank v. Hattaway,* 172 Ga. 731, 158 S. E. 565, 77 A. L. R. 375; *Charter Oak Life Ins. Co. v. Smith,* 43 Wis. 329. With respect to the burden of proof as to loss in cases of failure of the pledgee to sell or collect choses in action, see *Amick v. Empire Trust Co.* 317 Mo. 157, 296 S. W. 798, 53 A. L. R. 1064.

In view of these conclusions, we do not find it necessary to consider other contentions and assignments of error.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.