Aurora National Bank, Appellee, v. Barbara O. Funk, Appellant.

Gen. No. 9,205.

Opinion filed September 28, 1937. Substituted opinion and rehearing denied August 16, 1938.

SHEARER, O'MALLEY & SEARS, of Aurora, for appellant; BARNABAS F. SEARS and KENNETH D. THOMAS, both of Aurora, of counsel.

B. P. ALSCHULER, of Aurora, for appellee; R. C. PUTNAM, W. C. O'BRIEN, E. F. STREIT and A. L. GRISWOLD, all of Aurora, of counsel.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

On June 25, 1932 the circuit court of Kane county rendered its judgment by confession in favor of the Aurora National Bank and against John B. Olinger and Barbara O. Funk for $18,830 upon five notes, one for $205 dated December 9, 1931, one for $10,000 dated March 30, 1932, one for $3,000 dated May 11, 1932, one for $3,000 dated May 19, 1932 and one for $2,500 dated May 23, 1932, all executed by the said John B. Olinger and Barbara O. Funk. Upon this judgment an execution was issued but not served on the defendants and returned unsatisfied on September 23, 1932. In August, 1935, an alias execution was issued and served on Barbara O. Funk and thereafter in September, 1935, the court, upon her motion, entered an order opening up said judgment and granting her leave to answer. On October 16, 1935, her sworn answer was filed. By this answer she averred that the note of $10,000 dated March 30, 1932, upon which judgment

was taken, was a renewal of a note originally executed by John B. Olinger to the plaintiff bank on April 1, 1927 for money loaned by the plaintiff to the said John B. Olinger, that as security for the payment of said note, said Olinger, together with his wife, executed a trust deed to the plaintiff, by which they conveyed to the plaintiff certain property located in Aurora improved by a two-story brick business building referred to in this record as the North Broadway property, that thereafter and at various times between that date and April 15, 1930, said note was renewed by the said John B. Olinger, that on this date, April 15, 1930, this defendant was called into the bank and then and there requested by George L. Thon, the cashier of the plaintiff, to affix her signature to said renewal note dated March 31, 1930, that prior to that time this defendant's signature did not appear on said note of March 31, 1930 or any of the prior renewal notes, that upon the request of said cashier to affix her signature to said note, she at first refused so to do, that said cashier then stated to her that it would look better when the auditor came if her signature appeared on said note and further stated to her that signing said note by her meant nothing to her, as she in no event could be held for more than the North Broadway store, as said note covered said store and said store had been deeded back to her, that relying upon said statements so made by said cashier, in whom she had great trust and confidence, she signed said note of March 31, 1930 and to each renewal thereof, including the note of March 30, 1932, upon which judgment was taken. By her answer she further averred that the note of $3,000 dated May 19, 1932, upon which judgment was taken, was originally signed by Olinger and given by him to the plaintiff for money loaned by the plaintiff to him, that it was renewed at various times and on or about May 19, 1931, upon the same representations by Thon, the

cashier, as were made to her in connection with obtaining her signature to the $10,000 note, she, this defendant, placed her signature on the back thereof as she did upon another occasion when the same was renewed, that on May 19, 1932 she, at the request of Thon, affixed her signature thereto with Olinger as a maker. By her answer she averred that at the time she affixed her signature to any of said notes, she never received any benefit or anything of value therefor, and had she known the true character of the transaction she would not have signed either of said notes.

No further steps were taken in the case until January 11, 1936, at which time counsel for the plaintiff served counsel for defendant with notice to the effect that counsel would appear before the court on January 13, 1936 and move the court to set the cause for hearing. On January 13, 1936, counsel for defendant filed a written demand for a jury trial and on the same day filed objections to the cause being tried by the court without a jury. This motion was subsequently denied and on September 3, 1936 the trial was had, at the conclusion of which the court took the case under advisement and continued the cause until September 17, 1936. On September 10, 1936 counsel for the defendant served notice on counsel for the plaintiff that defendant would ask leave to amend her answer and on September 17th the amendment was filed by leave of court. By this amendment defendant averred that at the time she affixed her signature to the renewal notes dated March 31, 1930 and May 19, 1931 respectively, the said notes had been executed by said John B. Olinger and had been delivered to the bank by Olinger and had been accepted by the plaintiff bank; that at the time she affixed her signature thereto, neither of said notes were then due and that they were each given by her without consideration; that each note signed by her subsequent to March 31, 1930 and May 19, 1931 respectively, in-

cluding the ones dated March 31, 1932 and May 19, 1932 respectively, and upon which judgment was confessed herein were renewals of the ones dated respectively March 31, 1930 and May 19, 1931 and were executed by her because of the fact that she had signed the ones dated March 31, 1930 and May 19, 1931. On the same day that this amendment to the answer was filed, the court entered an order finding the issues for the plaintiff and directing that the judgment theretofore rendered on June 25, 1932 for $18,830 stand in full force and effect as of the date of its rendition. From this order defendant, Barbara O. Funk, brings the record to this court for review.

The evidence discloses that John B. Olinger is the brother of appellant, that the North Broadway property was a store building located at No. 28 North Broadway in Aurora and prior to March 31, 1927 was owned by appellant and her brother as tenants in common. On March 31, 1927, appellant conveyed her undivided interest in said property to her brother in order that he might borrow money and execute mortgages thereon to secure the payment of the same. Thereafter Olinger borrowed from appellee $40,000. Evidencing this indebtedness he executed one note for $30,000 and secured the payment thereof by a first mortgage upon said property, and also executed another note for $10,000 and secured its payment by a second mortgage upon said property and, as we understand the record, secured its payment by judgment note for the principal sum of $10,000. After executing these notes and mortgages, Olinger reconveyed to appellant an undivided one-half interest in this property. The original $10,000 note, bearing the date of April 1, 1927, was renewed every six months by Olinger. The note executed by him on September 30, 1929, became due March 30, 1930. According to the testimony of George L. Thon, appellee's cashier, a renewal note for

$10,000, dated March 31, 1930, was prepared and signed by Olinger but the bank refused to accept it until it was executed by appellant. According to the testimony of appellant, this note for $10,000 was executed by her at the request of Thon; that she did so relying upon his statement to her that signing it would mean nothing to her as she would only be liable thereon to the extent of her interest in the North Broadway property, and upon the further statement that the note so executed would look better when the auditors came in. Thon denied making these statements to appellant and testified that the bank was dissatisfied with Olinger's credit and that he so told appellant. That he also told her that the bank must have this note further secured by her signature before it would be accepted. That appellant thereupon signed the note which had been already signed by Olinger and the bank then did accept it. The evidence is further that after the new note was so signed by appellant, that then the bank surrendered the maturing note executed by Olinger alone and thereafter, six months later, when the note so signed by both Olinger and appellant matured, Olinger and appellant both executed to the bank a renewal note and continued to do so every six months to and including March 30, 1932, this being the $10,000 note upon which judgment was taken.

Counsel for appellant argue that if appellant's signature to this note was a condition of its renewal, the records of the bank would have disclosed that it was signed by her before accepted by the bank. Appellee did offer in evidence the liability ledger of the bank which contained a record of the several Olinger notes and this ledger did not disclose that appellant's name appeared upon the note of March 31, 1930, while it did show that her signature appeared upon the subsequent renewals. This record, however, does disclose that the note of March 31, 1930 was accepted by appellee on

April 7, 1930 and the testimony of appellant when called as a witness for appellee under section 60 of the Practice Act was that she signed this note on the day of its date. When testifying on her own behalf, she stated that she signed in March or April about the time the other note became due. The record indicates that her counsel stipulated that this note was signed by her in March, 1930.

Whether appellee had accepted this note of March 31, 1930 before appellant placed her signature thereto was a disputed question of fact. Olinger was not a witness and did not testify. Thon, the cashier of appellee, testified positively that appellant signed this note before the previous one executed by Olinger alone was canceled and returned to Olinger and that the note of March 31, 1930 was not accepted by appellee until after appellant signed it. His evidence is not contradicted unless it be said that the absence of appellant's name upon the liability ledger showing Olinger's liabilities refutes his testimony. From all the evidence the trial court found that appellee had not accepted this note until after it had been signed by appellant and that finding, in our opinion, is not only supported by the evidence but is the only conclusion that could be arrived at from the record.

The evidence concerning the $3,000 note is that appellee, on February 23, 1928, loaned Olinger this amount of money and he, Olinger, executed a note therefor to appellee. This note was renewed several times. On May 19, 1931, Olinger executed a renewal thereof to the bank, due six months after date and appellant, at the request of Thon, placed her name on the back thereof beneath the words stamped thereon: "payment of this note guaranteed at maturity." The records of the bank show that this note was accepted by the bank on June 1, 1931 and the evidence is substantially the same as that pertaining to the $10,000

note of March 31, 1930 and our conclusion, from all the evidence, is that appellee did not accept this note until after it had been indorsed and its payment guaranteed by appellant.

Appellant testified with reference to this indorsement that her brother came to Aurora from Chicago to pay appellee interest on this $3,000 note, that she was in the bank with her brother at the time and Mr. Thon asked her to sign the note but that her brother told her to do as she pleased about signing it. She further testified that she placed her name on the back thereof but understood she ''would not be holden for it.'' By this she testified; ''I mean because my name was not on the face of the note I would not be liable. I think that signing on the front would be different.'' The evidence further discloses that on November 19, 1931, this note was renewed by Olinger and again indorsed and payment guaranteed by appellant and when that note became due on May 19, 1932 it was again renewed but appellant executed it then as a co-maker with Olinger. The evidence is further that on March 5, 1932, appellant signed a general credit statement to appellee which disclosed that her primary liability to the appellee at that time was $16,005 and that she was also liable to appellee as indorser for her brother in the sum of $3,000. The evidence is further that at the time appellant executed these notes she valued the property covered by the mortgages to appellee at approximately $75,000 and appellant also, at that time, considered her brother perfectly solvent and in order to protect her from financially involving herself upon her brother's obligations, he, appellant's brother, conveyed to her his undivided interest in the property. Counsel argue that the record discloses that appellant was a widow, 64 years of age at the time of these transactions, that she had dealt with appellee and Mr. Thon, its cashier, for many years, that she reposed

confidence in him, that a fiduciary relationship existed and that when Thon told her she would not make herself liable to any further extent than she was already if she executed with Olinger the $10,000 note that he was guilty of such a misrepresentation as amounted to fraud. Thon denied that he told appellant she would not make herself liable to any further extent than she was already if she executed the $10,000 note and denied that he told her that by signing this note it would not mean anything to her. Appellant testified that she knew if she signed a note on the front that she would have to pay and the evidence is that she always so signed the $10,000 note and on May 19, 1932 so signed the $3,000 note. From a careful consideration of all the evidence in this record, we agree with the trial court that the evidence fails to establish a fiduciary relationship between the parties hereto and does not disclose any fraud practiced by appellee in procuring appellant to execute the two notes involved herein. Nor do we think that there is any merit in appellant's contention that either of these notes were executed without any consideration therefor. Extension of time by appellee for the payment of the obligations of Olinger was a sufficient consideration for the execution of these notes by appellant. *Commercial State Bank v. Folkerts,* 200 Ill. App. 385.

It is finally insisted by appellant that the trial court erred in overruling her motion for a jury trial. Counsel argue that inasmuch as this proceeding was commenced on June 25, 1932, the Civil Practice Act and Rule 26 of the Supreme Court have no application. The pertinent part of Rule 1 of the Supreme Court provides that: "The provisions of the Civil Practice Act with respect to . . . trial practice (Sections 48–73) shall apply to proceedings instituted prior to January 1, 1934 and not on trial prior to that day. Except as provided by this rule, or by written stipulation

of parties, or by order of the court, upon notice and motion, proceedings instituted prior to January 1, 1934, shall not be governed by the Civil Practice Act.'' It is contended that as section 64 of the Practice Act [Ill. Rev. Stat. 1937, ch. 110, § 188; Jones Ill. Stats. Ann. 104.064], deals generally with the question of the manner of waiving a jury, that question is therefore one of trial practice and as Rule 26 relates to trial practice where there has been a confession of judgment and as Rule 1 does not mention Rule 26, therefore Rule 26 cannot be held to be applicable to this proceeding.

The reference in Rule 1 to sections 48–73 is to Article VII of the Civil Practice Act entitled ''Trial Court Practice.'' Rule 26 provides that when a judgment by confession is opened up, that then the issues shall be tried by the court without a jury unless the defendant or plaintiff demands a jury at the time of the entry of the order opening up the judgment. The record discloses that while the judgment was rendered on June 25, 1932, the order opening it up was entered in September 16, 1935. The provisions of the Civil Practice Act and the Supreme Court rules were in effect at that time. Appellant, on October 16, 1935, filed an answer consisting of eight paragraphs substantially the same as her affidavit filed in support of her motion to open up the judgment. No demand for a jury trial was filed at the time the order was entered opening up the judgment or at the time she filed her answer. Section 64 of the Practice Act provides among other things that if the defendant desires trial by jury, he shall make such demand in writing at the time of filing his appearance, otherwise he shall be deemed to have waived a jury. While Rule 1 does not in express terms refer to Rule 26, it must be held to be embraced therein inasmuch as Rule 26 outlines the procedure and trial practice to be followed where judgments by confession are entered and subsequently opened up. Notwith-

standing the original judgment was taken prior to the effective date of the Civil Practice Act, still the proceedings to open up that judgment were had thereafter and its provisions as to pleading was followed by the defendant. Rule 1 and Rule 26 must be read and construed together and when so read it is apparent that the trial court did not err in denying appellant's demand for a jury trial first made on January 13, 1936.

Finding no error in the record, the judgment of the circuit court will be affirmed.

*Judgment affirmed.*