National State Bank of Metropolis, Illinois, Appellant, v. Miles-Botts Company, Inc. and L. M. Murrie (L. M. Murrie, Appellee).

Opinion filed June 14, 1940. Rehearing denied August 20, 1940.

WALTER ROBERTS and H. A. EVANS, both of Metropolis, for appellant.

GROVER E. HOLMES, of Metropolis, and CHAS. DURFEE, of Golconda, for appellee.

MR. JUSTICE DADY delivered the opinion of the court.

Plaintiff, the National State Bank of Metropolis, Illinois, obtained a judgment by confession on a note for $7,000 payable to its order signed by defendant Miles-Botts Company, Inc., a corporation, and indorsed in blank by defendant, L. M. Murrie. On motion of defendant Murrie the judgment was opened with leave to file an answer, and the judgment was ordered to stand as security. The issues formed by said defendant's answer and plaintiff's reply were tried by the court without a jury, and resulted in a judgment for the defendant Murrie. Plaintiff prosecutes this appeal to restore the judgment as originally confessed in the amount of $7,717.96.

The only issues to be decided on this appeal are set forth in the following language in defendant's brief:

"As disclosed by the record, there is submitted to this Court for consideration but two questions:

"A. Whether as between the plaintiff bank and L. M. Murrie the indorsement on the back of the note was an accommodation.

"B. Whether L. M. Murrie waived demand and notice of dishonor of the note in issue."

The record discloses that prior to 1929 the Miles-Botts Company, which operated a "Chain-Grocery" business, borrowed $10,000 on its individual note from plaintiff. On June 27, 1929, the company note was re-

duced to $7,000. Korte, president, and Bremer, cashier of the bank, testified in substance that in September of 1933 the bank examiners criticized the $7,000 company note, and requested that it be secured or collected; that E. C. Botts, secretary-treasurer of the company, was called to the bank, and in the presence of the examiners was told such note had to be paid or secured; that Botts left the bank with a new note dated June 30, 1933, and returned with it signed by the company, and indorsed by defendant Murrie; that the bank accepted the new note and gave Botts the old one marked "paid"; that thereafter the note in question, dated June 30, 1934, similarly signed and indorsed, was given in renewal of the note dated June 30, 1933; that at no time prior to the making of the indorsement or at any time thereafter was Murrie told he would not be held liable thereunder; that no cash or credit was given Murrie for his indorsement and no demand for payment was made or notice of dishonor given; that the first complaint Murrie made concerning his liability under the indorsement was after judgment, when he sought a release upon payment of his personal note to the bank of $7,250, and which request was refused.

Botts, who testified for Murrie, stated that he went to the bank and was told by plaintiff's president that the examiners were demanding additional security on the company note, and he should secure the signature of Murrie; that he took the note to Murrie and told him the "Examiners were there and wanted additional security on this paper and Mr. Murrie signed the note" without "fuss or argument," and he returned it to the bank; that at the time Murrie was acting as president of the company; that he recalled only one note on which such indorsement was secured.

Murrie testified that he indorsed the note in question; that it was brought to him by Botts, who told him at the time he signed that the "Bank examiner wanted further security" and Korte had sent the note to him

for further security; that he had not talked to Korte before the note was signed; that thereafter he had conversations with Korte in which Korte promised to release him on his indorsement if his personal note was paid.

We are of the opinion that the issues presented should be decided against the defendant Murrie. Murrie indorsed the note in question before delivery to the payee bank without indicating on the note, although he had the right to do so, any restrictions or conditions to his liability. His status became that of a person not otherwise a party to an instrument who places thereon his signature in blank before delivery and becomes liable as an indorser. Such an indorser, where the note is payable to the order of a third person, as in this case, is liable to the payee and to all subsequent parties, unless he signs for the accommodation of the payee, in which event he is liable to all parties subsequent to the payee (ch. 98, § 84, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 89.084]).

To escape liability, Murrie had to show he was an indorser for the accommodation of the payee bank. Such proof is wholly lacking. Every reasonable inference that may be drawn from the evidence is that the Miles-Botts Company was the accommodated party and not the bank.

The purpose of the bank in obtaining the indorsement was to secure the added responsibility of Murrie for the payment of the company debt. Murrie was lending his name to the Miles-Botts Company for the purpose of continuing such company's credit with the bank. It was reasonable for him to do so for he was a stockholder, acting president, and financially interested in its affairs. When the indorsement was made Murrie expressed no intention by word or act that he intended to accommodate the bank. The law gave him the privilege of attaching any condition he saw fit as to his liability but he failed to avail himself of this right when

the indorsement was made. (*Naef v. Potter*, 226 Ill. 628). It is significant that when the indorsement was made the bank made its request plain, that is it sought additional security, and the bank did not, nor did any of its officers by representations or by their conduct, mislead or induce Murrie to sign or lead him to believe he was signing for the bank's accommodation with the promise to hold him harmless. The mere fact, as testified to by Murrie and Botts, that Korte requested the signature of Murrie and the bank received a benefit thereby does not make the bank the accommodated party. (*Paden v. American State Bank & Trust Co.* [Tex. Civ. App.], 103 S.W. (2d) 243.) The most Murrie's testimony shows in his favor is that after the indorsement was made he had conversations with Korte in which his indorsement was discussed and he was promised a release if he paid his personal note. Korte admitted that some conversations took place after judgment was taken, at which time Murrie sought a release on his indorsement, but Korte denied any promise to that effect on his part or on the part of the bank. Such an agreement, if made, was not pleaded by Murrie. No consideration is shown therefor, and an oral conversation or conversations of such character would not be binding on the bank under the stated circumstances. (*State Bank of West Pullman v. Hovnanian*, 250 Ill. App. 144; *Cozad State Bank v. McLaughlin*, 128 Neb. 87, 258 N. W. 36.)

Plaintiff was a holder for value of the note sued upon, and Murrie was liable to such bank on the note notwithstanding the bank knew at the time of the taking of said note that Murrie was only an accommodation indorser for his company. (Ch. 98, § 49, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 89.049]). It is admitted that the old company note for $7,000 was given for value. The renewal of that note furnished ample consideration for the new note signed by the company and indorsed before delivery by Murrie, although no cash

or credit passed directly to Murrie. (*Commercial State Bank of Forreston v. Folkerts,* 200 Ill. App. 385; *Aurora Nat. Bank v. Funk,* 296 Ill. App. 437; *Pierce v. Lowenthal,* 161 Wash. 336, 295 Pac. 1021; *Reed v. Gormley,* 57 Ga. App. 821, 196 S. E. 921; *Ætna State Bank v. Hawks,* 213 Iowa 340, 239 N. W. 91; *American Nat. Bank of Mt. Carmel v. Woolard,* 342 Ill. 148.)

The right of an indorser, such as Murrie, to a demand for payment or to a notice of dishonor may be waived (ch. 98, §§ 104, 130, 131, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 89.104, 89.130, 89.131]). Embodied in the face of the note sued on was the following provision: ''Presentation for payment, notice of dishonor, protest and notice of protest are hereby expressly waived by all parties to this note, including endorsers and guarantors.'' Murrie contends that such provision of waiver is not binding on him for the reason it appears on the face of the note and not above his signature on the back thereof. There is no merit to this contention. Such language was a part of the contract and included a waiver by the indorser and such waiver was binding on Murrie. (*Dunnigan v. Stevens,* 122 Ill. 396; *Katz Finance Co. v. Levy,* 241 Ill. App. 576; *Spragins v. McCaleb,* 237 Ala. 658, 188 So. 251; *Cato v. Jeffreys* (Tex. Civ. App.), 50 S. W. (2d) 413; *Lewis v. Small,* 172 Minn. 405, 215 N. W. 785, 10 C. J. S. 957.)

For the reasons indicated, the judgment of the trial court is reversed and remanded with directions to restore the original judgment entered in favor of the plaintiff and against the defendants in the amount of $7,717.96 as of the date thereof, January 12, 1935, and with costs of suit including costs of this appeal.

*Reversed and remanded.*